UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ACCELLIX, INC.,
*a Maryland Corporation*,

    Plaintiff,

v.                                                      Case No.: 8:25-cv-440-TPB-AEP

CHRISTIAN AGUILERA-SANDOVAL,

    Defendant.
_____/

**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION**

This matter comes before the Court on "Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction and Incorporated Memorandum of Law," filed by counsel on February 21, 2025. (Doc. 2). On March 23, 2025, Defendant Christian Aguilera-Sandoval filed a response in opposition. (Doc. 26). On March 24, 2025, the Court held a hearing on the motion. *See* (Doc. 27). After considering the motion, response, court file, and the record, the Court finds as follows:

**Background**

Plaintiff Accellix, Inc., is a medical equipment manufacturer that created an automated cell phenotyping platform designed to "automate customers' quality control workflow from sample preparation to data analysis to generate rapid cell phenotyping results." Plaintiff relies upon its LinkedIn page to advertise and sell its services and products internationally, including in North America, Europe, and Asia.

Defendant worked for Plaintiff as an Associate Director of Scientific Affairs. As such, Plaintiff entrusted Defendant to oversee and participate in the development of such processes and analysis of data. In connection with his role, Defendant had access to Plaintiff's trade secrets, including, among other things, its customer and potential customer information, employee and agent relationships. Given the nature of Defendant's position, Plaintiff provided him with access to its confidential business information. Because of this access, as a condition of his employment with Plaintiff, Defendant entered into a "Propriety Information and Invention assignment Agreement" ("Agreement") on or about February 14, 2022. (Doc. 1-A).

Pursuant to the Agreement, Defendant, for the term of his employment and for 12 months after the end of his employment, promised not to directly or indirectly, "(i) in the geographical areas that the Company does business or has done business at the time of my termination, engage or assist others in engaging in any business or enterprise (whether as owner, partner, officer, director, employee, consultant, investor, lender or otherwise, except as the holder of not more than 1% of the outstanding stock of a publicly-held company) that is competitive with [Plaintiff's] business, including without limitation, any business or enterprise that develops, manufacturers, markets, licenses, sells or provides any activity product or service that competes with any activity, product or service developed, manufactured, marketed, licensed, sold or provided, or planned to be developed manufactured, marketed, licensed, sold or provided, by [Plaintiff] during [Defendant's] employment."

Defendant served in his role as Plaintiff's Associate Director of Scientific Affairs until approximately November 19, 2024. Thereafter, on or about February 13, 2025, Defendant made a LinkedIn post highlighting his competing flow cytometry consulting services. Within the post, Defendant provides details regarding a competitive product offering for flow analysis. On or about February 14, 2025, Defendant made another LinkedIn post providing details regarding a competitive product offering for flow analysis. On or about February 17, 2025, Defendant made yet another LinkedIn post regarding his competing consulting services and product offerings. Within the post, Defendant offered to provide "tailor-made" services for workflows.

Plaintiff became aware of Defendant's actions throughout February 2025, starting with his first LinkedIn post on February 13, 2025. During the same time period, Plaintiff additionally learned that Defendant has been operating CRBECH Investments, Inc., a consulting company organized and existing under the laws of the State of Florida that appeared to provide similar services to Plaintiff. Plaintiff was, however, aware of an "outside project" Defendant was working on since at least October 2024 – ostensibly related to the competitive project or service now offered by Defendant.

Plaintiff filed its complaint on February 21, 2025, alleging breach of contract (Count I) and breach of common law duty of loyalty (Count II) by Defendant. (Doc. 1). On the same day, Plaintiff also filed its "Motion for Temporary Restraining Order and Preliminary Injunction and Incorporated Memorandum of Law." (Doc. 2). The

next day, on February 22, 2025, this Court denied the motion to the extent it requested a temporary restraining order, but set a later hearing to consider whether Plaintiff was entitled to a preliminary injunction. (Doc. 5).

## Legal Standard

To obtain a preliminary injunction, a movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Roman Catholic Diocese of Brooklyn v. Cuomo*, 2020 WL 6948354, at *1 (Nov. 25, 2020). "A preliminary injunction is an extraordinary and drastic remedy, and [the movant] bears the burden of persuasion to clearly stablish all four of these prerequisites." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1247 (11th Cir. 2016) (internal quotations omitted).

## Analysis

Plaintiff seeks to enjoin Defendant from offering a competitive product or service in violation of paragraph 6(i) of the Agreement which, as noted above, prohibits Defendant from "engaging in any business or enterprise . . . that is competitive with [Plaintiff's] business, including without limitation, any business or enterprise that develops, manufacturers, markets, licenses, sells or provides any activity product or service that competes with any [services or products sold], or planned to be developed manufactured, marketed, licensed, sold or provided, by

[Plaintiff]" for the term of his employment and 12 months after. (Doc. 1-A). The Court finds that Plaintiff is entitled to the requested preliminary injunction.

### 1. Substantial Likelihood of Success on the Merits

First, based on the evidence before the Court, the Court finds that Plaintiff has demonstrated a likelihood of success on its claims that Defendant has breached paragraph 6(i) of the Agreement by unlawfully competing against it. Defendant was aware of the restrictive covenant in paragraph 6(i) of the Agreement. However, Defendant takes the position that his activities were not in competition with Plaintiff and, thus, not within the scope of the Agreement. Defendant admits he made certain LinkedIn posts offering to provide services in the geographical areas where Plaintiff does business. But he denies that his activities directly compete with Plaintiff's products and services, specifically autoclassification services. Defendant's arguments are not well taken. Contrary to his position, his activities, specifically his LinkedIn posts, demonstrate that he was offering products and services that directly competed with Plaintiff's products and services. As such, Defendant's conduct likely breached the restrictive covenant in paragraph 6(i) of the Agreement.

Pursuant to § 542.335, *F.S.*, a restrictive covenant is valid and enforceable if: (1) it is in writing and signed by the person against whom enforcement is sought; (2) it is justified by one or more legitimate business interests; and (3) the restriction is reasonably necessary to protect the legitimate business interests justifying the restriction. The provision also provides a list of legitimate business interests that justify the enforcement of a restrictive covenant, including trade secrets, valuable

confidential business or professional information, substantial relationships with prospective and existing customers, and customer goodwill associated with a specific geographic location or ongoing business.

It is undisputed that Defendant signed the Agreement. The facts further demonstrate the existence of Plaintiff's legitimate business interests, including in protecting its substantial relationships with its customers, its goodwill, as well as in its trade secrets and confidential information that is not otherwise a trade secret. These legitimate business interests justify the restriction in paragraph 6(i) of the Agreement.

Additionally, the restriction contained in paragraph 6(i) of the Agreement is reasonably necessary to protect Plaintiff's legitimate business interests.  First, the 12-month time restriction on solicitation and competition is reasonable.  Second, the Court finds that the geographic restriction in the areas where Plaintiff does business or has done business up until the date of Defendant's termination is reasonably necessary to protect Plaintiff's legitimate business interests because Plaintiff sells its products and services across the nation, as well as internationally, and the market for Plaintiff's products and services is not particularly large.  Courts in this circuit have enforced nationwide restrictions where necessary to protect confidential business information. *See, e.g., Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1238 (11th Cir. 2009) (finding international restriction reasonable given testimony that company had clients all over the US and Canada and marketed itself throughout both countries); *AutoNation, Inc. v. O'Brien*, 347 F. Supp. 2d 1299, 1304 (S.D. Fla.

2004) (finding a prohibition on working in "any geographic space in which [former employer] operates" reasonably necessary to protect confidential business information relevant to the markets in which it operates, which included 75 dealerships nationwide).

Prior to his resignation from Plaintiff, Defendant was well-positioned to access and know its confidential and proprietary business information, including, but not limited to, Plaintiff's technical product data, internal analysis of Plaintiff's automating process, proprietary product development plans, customer lists and customer data, marketing data, scope of work data, and pricing data and strategies. Plaintiff provided Defendant with access to this information only on the condition that he execute his Agreement, acknowledging his confidentiality and non-disclosure obligations, and his agreement not to use such information on behalf of a competing company. By operating a competing company and making LinkedIn posts where he advertised a competitive product, Defendant has breached his Agreement.

2. Irreparable Injury

The Court finds that there is a substantial likelihood of irreparable injury. The Eleventh Circuit has explained that "the loss of customers and goodwill" can present irreparable harm. *Ferrero v. Assoc. Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991); *see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Hagerty*, 808 F. Supp. 1555, 1559-60 (S.D. Fla. 1992); *AutoNation, Inc. v. Peters*, No. 16-60010-CIV-Cohn/Seltzer, 2016 WL 1722365, at *5 (S.D. Fla. Apr. 29, 2016). Here, Plaintiff's Chief Operating Officer testified that Defendant has made actual contact with

Plaintiff's customers regarding his competitive services. The Court is not persuaded by Defendant's argument that there has been no harm because Plaintiff has not yet lost a customer. Plaintiff need not wait to seek an injunction or relief until a customer is lost. *See Winter*, 555 U.S. at 380-81. Plaintiff has provided sufficient evidence regarding this factor.

### 3. Balance of Harms

The balance of harms weighs in favor of granting a preliminary injunction. If a preliminary injunction is not granted, Defendant can continue to grow his business, publicly post on LinkedIn regarding the same, and otherwise benefit from information protected by his agreement with Plaintiff. Defendant's contractual obligations cannot be ignored simply because the effect may burden him and his desire to operate a competing company and product offering. *See N. Am. Prods. Corp. v. Moore*, 196 F. Supp. 2d 1217, 1231 (M.D. Fla. 2002); *New Horizons Comput. Learning Ctrs., Inc. v. Silicon Valley Training Partners, Inc.*, No. 2:02-cv-459-FTM-29SPC, 2003 WL 23654790, at *7 (M.D. Fla. 2003) (balancing favored an injunction where the harm to the employer greatly outweighed the minor harm to an employee, which was merely that the employee could not operate the business he wanted to start for one year). This is particularly true when the burden on Defendant is time limited. Additionally, the Court has heard evidence that additional work is available to Defendant in the flow cytometry industry – just not through the operation of a business and provision of services that competes with Plaintiff. Indeed, evidence produced at the hearing demonstrated that Defendant has successfully taught

various courses in his subject matter area, and he is certainly free to work in the education field during the term of the Agreement.

### 4. Public Interest

Finally, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The Court finds that the public has a strong interest in the protection and enforcement of contractual rights. *See Pitney Bowes, Inc. v. Acevedo*, Case No. 08-21808, 2008 WL 2940667, at *6 (S.D. Fla. July 28, 2008).

### 5. Bond Requirement

Federal Rule of Civil Procedure 65(c) specifies that a Court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Here, the Court finds that a $500,000.00 bond is appropriate, given Defendant's income while employed by Plaintiff.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED:**

(1) Plaintiff Accellix, Inc.'s "Motion for Temporary Restraining Order and Preliminary Injunction and Incorporated Memorandum of Law" (Doc. 2) is hereby **GRANTED** to the extent that Plaintiff requests a preliminary injunction.

(2) Defendant Christian Aguilera-Sandoval, his agents, servants, and all those persons in active concert or participation with him, are **ENJOINED** from violating paragraph 6(i) of the Agreement by: engaging or assisting others in engaging in any business or enterprise (whether as owner, partner, officer, director, employee, consultant, investor, lender or otherwise, except as the holder of not more than 1% of the outstanding stock of a publicly-held company) that is competitive with Plaintiff Accellix, Inc.'s business of offering products and services relating to flow cytometry to customers in North America, Europe, and Asia. This prohibition specifically does not prevent Defendant from teaching flow cytometry.

(3) Plaintiff Accellix, Inc., shall post a bond in the amount of $500,000.00.

(4) This Preliminary Injunction shall remain in effect for one year – until April 8, 2026.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida on this <u>8th</u> day of April, 2025.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE