**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ACCELLIX, INC.,

     Plaintiff,

v.                            Case No. 8:25-cv-440-TPB-AEP

CHRISTIAN AGUILERA-
SANDOVAL,

     Defendant.

                               /

## <u>ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>

This matter is before the Court on "Plaintiff's Motion for Summary Judgment,"
filed on March 4, 2026, and "Defendant's Summary Judgment Motion for Count II,"
filed on March 9, 2026.   (Docs. 166; 171).   Each side filed a response in opposition to
the other side's motion.   (Docs. 190; 192).   At the pretrial conference on March 18,
2026, the Court announced its ruling on the cross-motions for summary judgment.
*See* (Doc. 193).   This Order memorializes and explains the Court's previous oral
ruling.   Upon review of the motions, responses, court file, and the record, Court
further expands upon its prior ruling as follows:

### <u>Background</u>

Plaintiff Accellix, Inc., is a medical equipment manufacturer.   Specifically,
Plaintiff manufactures and sells flow cytometers that quickly complete an automated
cell phenotyping process.[1]   Plaintiff's primary customers are those looking to use

---

[1] "Cell phenotyping is the process of identifying and characterizing cells based on their
physical and biochemical properties."   (Docs. 180 at ¶ 4; 186 at ¶ 4).   Plaintiff's flow

Plaintiff's flow cytometer machines and related supplies to efficiently perform the phenotyping process for cells to be used in cell and gene therapy, immunology, cancer research, and stem cell biology.   Without Plaintiff's flow cytometer machine, the cell phenotyping process would require a technician or skilled scientist, who has undergone years of training, to perform the cell phenotyping process manually. Plaintiff's flow cytometers serve to shortcut that manual process and improve accuracy throughout the cell phenotyping process.

Defendant Christian Aguilera-Sandoval worked for Plaintiff from February 14, 2022, until November 19, 2024.   He started work as Plaintiff's Applications Manager and was later promoted to Associate Director of Scientific Affairs.   Defendant's responsibilities in the course of his employment were often client-facing and required him to help develop Plaintiff's equipment and processes and demonstrate them to prospective clients to secure their business.   To allow Defendant to perform these tasks, Plaintiff disclosed to Defendant its confidential information, including information about its customers and potential customers.

Because of Defendant's access to confidential information and trade secrets, as a condition of his employment with Plaintiff, Defendant entered into a "Proprietary Information and Invention Assignment Agreement" (the "Agreement") on or about February 14, 2022.   (Doc. 1-1).   Pursuant to the Agreement, Defendant promised, for the term of his employment and for 12 months after the end of his employment, that he would not directly or indirectly engage in a business that competed with Plaintiff.

---

cytometer machines use "fluorescent markers to analyze surface and intracellular proteins[.]" (*Id.*).

Specifically, Defendant agreed that he would not:

> (i)   in the geographical areas that the Company does business or has done business at the time of [his] termination, engage or assist others in engaging in any business or enterprise . . . that is competitive with [Plaintiff's] business, including without limitation, any business or enterprise that develops, manufacturers, markets, licenses, sells or provides any activity product or service that competes with any activity, product or service developed, manufactured, marketed, licensed, sold or provided, or planned to be developed, manufactured, marketed, licensed, sold or provided, by [Plaintiff] during [Defendant's] employment.

(*Id.*).

Since at least October 18, 2024, Plaintiff, through its Chief Business Officer Rey Mali, was generally aware that Defendant had been working on an "outside project" for another company while still employed by Plaintiff.   However, when Plaintiff asked Defendant for more details on the "outside project" to determine whether Defendant's pursuing the project breached the Agreement, Defendant declined to provide details. Because of Defendant's unresponsiveness, Plaintiff believed that Defendant was in breach of the Agreement and decided to terminate Defendant on November 19, 2024.

On February 13, 2025, Plaintiff became aware of a Linked-In post by Defendant describing his own "tailor-made" autoclassification services, the same services Plaintiff offered.   At about the same time, Plaintiff additionally learned that Defendant had been operating CRBECH Investments, Inc., a Florida consulting company that provides flow cytometry services similar to those offered by Plaintiff.   Plaintiff contends Defendant had, in fact, provided private flow cytometry consulting services to Plaintiff's then-prospective customers Gift of Life and SlingShot.

Plaintiff filed this action on February 21, 2025, alleging breach of contract (Count I) and breach of the common law duty of loyalty (Count II) by Defendant.

(Doc. 1).   Plaintiff seeks injunctive relief under Count I and disgorgement of ill-gotten gains and forfeiture of Defendant's salary while employed with Plaintiff under Count II.

On the same day Plaintiff filed its complaint, it also filed its "Motion for Temporary Restraining Order and Preliminary Injunction and Incorporated Memorandum of Law."   (Doc. 2).   The Court denied the motion to the extent it requested a temporary restraining order.   (Doc. 5).   On March 24, 2025, the Court held a hearing on the motion to the extent it requested a preliminary injunction. (Doc. 27).   The Court thereafter granted Plaintiff's motion and entered a preliminary injunction finding, among other things, that Plaintiff had established a substantial likelihood of prevailing on the merits of its breach of contract claim.   (Doc. 33).   The preliminary injunction expired April 8, 2026, one year after its issuance.   Following many discovery disputes and multiple failed mediation conferences, the parties filed their respective motions for summary judgment.   At the pretrial conference on March 18, 2026, the Court announced its ruling on the cross-motions, granting Plaintiff's motion for summary judgment as to its breach of contract claim, but otherwise denying Plaintiff's motion and denying Defendant's motion.   (Doc. 193).

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   A properly supported motion for summary judgment is not defeated by the existence of a factual dispute.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).   Only the existence of a genuine issue of

material fact will preclude summary judgment.    *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact.    *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004).    When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact.    *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995).    If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true, and all reasonable inferences must be drawn in the nonmoving party's favor.    *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

Where the moving party is a plaintiff who will bear the burden of proof on an issue at trial, demonstrating the absence of a genuine issue of material fact requires the submission of credible evidence that, if not controverted at trial, would entitle the moving party to a directed verdict.    *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).    Only if the moving party meets that burden is the non-moving party required to produce evidence in opposition.    *Chanel, Inc. v. Italian Activewear of Fla. Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991).    Summary judgment should be denied unless, on the record evidence presented, a reasonable jury could not return a verdict for the non-moving party.    *Id.*; *see also Fitzpatrick*, 2 F.3d at 1115-16.

The standard for cross-motions for summary judgment is not different from the standard applied when only one party moves for summary judgment.    *See Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).    The Court must consider each motion separately, resolving all reasonable inferences against the

party whose motion is under consideration.   *Id.*   "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."   *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975)).

## Analysis

Plaintiff argues in its motion that it is entitled to summary judgment in its favor on both Count I and Count II of its complaint.   Defendant's cross-motion seeks summary judgment in his favor as to Count II of the complaint, principally arguing that Plaintiff cannot establish: (1) that Defendant engaged in a competitive business, (2) causation, or (3) damages.   He further argues that Plaintiff was aware of and approved of his private consulting for Gift of Life and SlingShot.[2]

---

[2] Defendant also argues that Plaintiff has "selectively" enforced the Agreement's restrictive covenant against him but not against other similarly situated employees, Andrew Klauk and Suha Kasey.   Plaintiff responds that these employees were not similarly situated.   Klauk's consulting business, Plaintiff contends, did not compete with Plaintiff, unlike Defendant's consulting practice.   Suha Kasey was a California-based employee, and Plaintiff argues it did not enforce restrictive covenants against her because California law prohibits employers from entering into non-compete agreements with their employees.   *See Edwards v. Arthur Andersen LLP*, 189 P.3d 285, 297 (Cal. 2008).   Even if Defendant could show "selective enforcement" by Plaintiff, however, he offers no legal authority holding that this would operate as a complete defense to the claims against him.   *See Vital Pharm., Inc. v. Alfieri*, No. 20-61307-CIV-SINGHAL/VALLE, 2022 WL 2981705, at *3 (S.D. Fla. July 27, 2022) (granting summary judgment on affirmative defense of selective enforcement based on the absence of any "Eleventh Circuit authority for the proposition that failing to enforce restrictive covenants against other employees constitutes waiver of that right"); *Larweth v. Magellan Health, Inc.*, No. 6:18-cv-823-Orl-41DCI, 2019 WL 11866499, at *9 (M.D. Fla. Dec. 17, 2019) (rejecting the proposition "that selective enforcement of non-competition agreements constitutes waiver").

### *Count I – Breach of Contract*

Under Florida law, courts may enforce "contracts that restrict or prohibit competition during or after the term of restrictive covenants, so long as such contracts are reasonable in time, area, and line of business."  § 542.335(1), *F.S.*  A plaintiff seeking to enforce a restrictive covenant must prove: (1) the contract containing the covenant is in writing and signed by the person against whom enforcement is sought; (2) the restriction is justified by one or more legitimate business interests; and (3) the restriction is reasonably necessary to protect those legitimate business interests. § 542.335(1)(a)-(c), *F.S.*

"To establish that the agreement itself is lawful and enforceable, a party must simply 'plead and prove the existence of one or more legitimate business interests justifying the restrictive covenant.'"  *USI Ins. Servs. of Fla., Inc. v. Pettineo*, 987 So. 2d 763, 766 (Fla. 4th DCA 2008) (quoting § 542.335(1)(b), *F.S.*).  Once Plaintiff establishes a *prima facie* case that the "restraint is reasonably necessary" to protect the legitimate business interests, "the burden shifts to the party opposing enforcement of the agreement to establish that it is overbroad or otherwise not reasonably necessary."  *See id.* (citing § 542.335(c), *F.S.*).

In Writing and Signed by Defendant

It is undisputed that the parties have a signed, written contract containing the restrictive covenant – on February 14, 2022, the parties entered into a written contract, the Agreement, which Defendant signed.  *See* (Doc. 1-1).

Justified by One or More Legitimate Business Interests and Reasonably Necessary to Protect the Legitimate Business Interests

Next, legitimate business interests justify the restrictive covenant. Legitimate business interests include trade secrets, confidential business or professional information, substantial relationships with prospective and existing customers, and customer goodwill associated with a specific geographic location or ongoing business. § 542.335(1)(b), *F.S.*

As the Court held previously in granting a preliminary injunction, the facts "demonstrate the existence of Plaintiff's legitimate business interests, including in protecting its substantial relationships with customers, its goodwill, as well as in its trade secrets and confidential information that is not otherwise a trade secret." (Doc. 33 at 6). The record demonstrates that while employed with Plaintiff, Defendant received highly sensitive information regarding Plaintiff's "technical and product data, internal analysis of [Plaintiff's] automating process, proprietary product development plans, customer information and data, marketing data, scope of work data, and pricing data and strategies." If Defendant were to engage in a competing business, he could use Plaintiff's confidential information to Plaintiff's detriment. *See Blue-Grace Logistics LLC v. Fahey*, 653 F. Supp. 3d 1172, 1179 (M.D. Fla. Jan. 26, 2023) ("An employer must prove that the employee[] could use the information to gain an unfair advantage[.]") (citing *Passalaqua v. Naviant, Inc.*, 844 So. 2d 792, 796 (Fla. 4th DCA 2003)). It follows that protecting this confidential information and protecting Plaintiff's substantial relationships with prospective and existing customers are legitimate business interests that justify the enforcement of the restrictive covenant in

paragraph 6(i) of the Agreement.   *See Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1234 (11th Cir. 2009) ("[W]hen an employee has access to confidential business information crucial to the success of an employer's business, that employer has a strong interest in enforcing a covenant not to compete."); *Pitney Bowes Inc. v. Acevedo*, No. 08-21808-CIV, 2008 WL 2940667, at *3 (S.D. Fla. July 28, 2008) (holding that a restriction on competition was justified because of the employee's role with the former employer and his access to the former employer's confidential information).

Other courts have held restrictive covenants similar to those in the Agreement before the Court to be reasonable.   *See, e.g., Leedom Mgmt. Grp., Inc. v. Perlmutter*, No. 8:11-cv-2108-T-33TBM, 2012 WL 909322, at *6-9 (M.D. Fla. Feb. 15, 2012), *report and recommendation adopted*, 2012 WL 909311 (M.D. Fla. Mar. 15, 2012) (holding that legitimate business interests, including protecting confidential or proprietary information, justified enforcing noncompete that restrained the defendant from "engaging in or assisting others in engaging in a business endeavor of the same nature and kind as that of Plaintiffs"); *Milner Voice and Data, Inc. v. Tassy*, 377 F. Supp. 2d 1209, 1215-17 (S.D. Fla. 2005) (holding that legitimate business interests including maintaining relationships with prospective or existing customers and extraordinary or specialized training justified enforcing noncompete that restrained the defendant from engaging in "activity that is competitive with the activities the [defendant] conducted for [plaintiff]").

The restrictive covenant "for a period of one year after" Defendant's termination is reasonable in time.   (Doc. 1-1 at ¶ 6); *see Hayes v. Med. Staffing, LLC v. Eichelberg*, No. 0:23-cv-60748-GAYLES, 2024 WL 670440, at *9 (S.D. Fla. Jan. 23, 2024) (finding

one-year restriction reasonable).   The restrictive covenant is also reasonable in geographic scope – throughout the United States, Europe, and the Asian Pacific – because Plaintiff's business targets specific prospective customers in those areas.   *See id.* (holding a restrictive covenant was reasonable in geographic scope where it prohibited competition throughout the United States because the plaintiff had relationships with clients in all states).

Finally, the Court notes that the Agreement does not completely prevent or otherwise prohibit Defendant from working in the flow cytometry industry – Defendant was not restricted from working in the flow cytometry education sector, and in fact, he did that while the preliminary injunction was in place.   The Court concludes that Plaintiff has established a *prima facie* case that the restrictive covenant is reasonably necessary to protect its legitimate business interests.

Overbroad, Overlong, or Otherwise Not Reasonably Necessary

Plaintiff having met its initial burden, the burden shifts to Defendant to establish that the restrictive covenant is overbroad or otherwise not reasonably necessary to protect the asserted business interests.   *See Pettineo*, 987 So. 2d at 766 (citing § 542.335(c), *F.S.*).   Defendant does not offer any arguments regarding the scope of the restrictive covenant or preliminary injunction entered in this case in his motion for summary judgment or in his response in opposition to Plaintiff's motion. Accordingly, he has not met his burden to show that the restrictive covenant is not reasonably necessary.

Instead, Defendant opposes summary judgment on Count I on two primary grounds.   First, Defendant argues that he did not breach the restrictive covenant

because his conduct in providing consulting services to Plaintiff's prospective clients was not "competitive" with the services and products offered by Plaintiff.   He bases this argument on highly technical distinctions between the flow cytometry methods as to which he provided consulting services and the flow cytometry system and equipment sold by Plaintiff.   But Plaintiff does not claim that Defendant competed with it by offering Plaintiff's customers or prospective customers the *same* technological product that Plaintiff offered.   Plaintiff argues that even if Defendant did not offer the *same* technological product to its specific prospective customers, Defendant, in at least two LinkedIn posts, offered to create "tailor-made" autoclassification services which is the same type of service Plaintiff offered.   The Court agrees with Plaintiff and holds that Defendant's conduct, as a matter of law, was competitive with Plaintiff's business and therefore violated the restrictive covenant Defendant agreed to as part of his employment contract with Plaintiff.

Defendant's second principal argument is that Plaintiff has no evidence it suffered the loss of a specific customer.   However, Plaintiff is not seeking monetary damages for lost customers or lost sales in Count I, but only injunctive relief, which is the preferred remedy for breach of a noncompetition agreement.   *See Miller Mech., Inc. v. Ruth*, 300 So. 2d 11, 12 (Fla. 1974).   The Court therefore rejects Defendant's argument that the absence of provable monetary damages precludes entry of summary judgment for Plaintiff on Count I.

For the reasons previously stated, Plaintiff is entitled to summary judgment as to Count I.   This is essentially the same determination that was made over a year ago when the Court determined that Plaintiff had established a substantial likelihood of

prevailing on the merits of its breach of contract claim and entered an injunction against Defendant that expired on April 8, 2026.   The Court notes that normally Plaintiff would be entitled to permanent injunctive relief against Defendant upon the entry of judgment on Count I in favor of Plaintiff, prohibiting competition with Plaintiff for one year after Defendant's employment ended.   However, because the preliminary injunction previously entered by the Court awarded Plaintiff the same relief, the Court declines to extend the injunction further.

### Count II – Breach of Fiduciary Duty of Loyalty

Plaintiff argues that Defendant breached his fiduciary duty by working with Plaintiff's prospective customers Gift of Life and SlingShot, undermining the services Plaintiff could have offered to the prospective customers by offering his own consulting services.   As a result, Plaintiff argues it is entitled to disgorgement of Defendant's ill-gotten gains from his consulting services and forfeiture of Defendant's compensation throughout his employment with Plaintiff.

It is undisputed that Defendant owed Plaintiff a duty of loyalty and that he engaged in private consulting work for Plaintiff's prospective customers Gift of Life and SlingShot.   Defendant argues, however, that his consulting work for Gift of Life and SlingShot included services not provided by Plaintiff, and that Plaintiff knew about his private consulting.   Therefore, he argues, he did not breach his duty of loyalty to Plaintiff.   While Defendant's conduct breached the Agreement as a matter of law, determining whether Defendant breached his fiduciary duty of loyalty, and whether the breach and other circumstances justify disgorgement of Defendant's consulting fees or forfeiture of his compensation, require a more fact-intensive inquiry

inappropriate for summary judgment.   Accordingly, the cross-motions for summary judgment are denied as to Count II.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Plaintiff's motion for summary judgment (Doc. 166) is **GRANTED** as to Count I.   The motion is otherwise **DENIED**.   The Court will enter a separate final judgment resolving all claims in this case, including Count I.

(2) Defendant's motion for summary judgment (Doc. 171) is **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 7th day of June, 2026.

_____
TOM BARBER
UNITED STATES DISTRICT JUDGE