**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ACCELLIX, INC.,

    Plaintiff,

v.                                                              Case No. 8:25-cv-440-TPB-AEP

CHRISTIAN AGUILERA-
SANDOVAL,

    Defendant.

_____/

## <u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

This matter is before the Court following a bench trial held from April 6, 2026, to April 8, 2026.   Having considered the evidence and applicable law, the Court grants judgment in favor of Plaintiff Accellix, Inc. and against Defendant Christian Aguilera-Sandoval.

## <u>Background</u>

This bench trial centers on whether Defendant Christian Aguilera-Sandoval breached a fiduciary duty of loyalty to his employer, Plaintiff Accellix, Inc., and if so, what remedy is appropriate.   Plaintiff filed its complaint on February 21, 2025, alleging breach of contract (Count I) and breach of common law duty of loyalty (Count II) by Defendant.   (Doc. 1).   On the same day, Plaintiff also filed its "Motion for Temporary Restraining Order and Preliminary Injunction and Incorporated Memorandum of Law."   (Doc. 2).   The next day, on February 22, 2025, the Court denied the motion to the extent it requested a temporary restraining order.   (Doc. 5). On March 24, 2025, the Court held a hearing on the motion to the extent it requested

a preliminary injunction, and the Court thereafter issued a preliminary injunction. (Docs. 27; 33).

After the close of discovery, the parties filed cross-motions for summary judgment. (Docs. 166; 171). At the March 18, 2026, pretrial conference, the Court announced its ruling on the cross-motions for summary judgment. (Doc. 193). Specifically, the Court granted Plaintiff's motion for summary judgment as to Count I, holding that Defendant breached a covenant to not compete. (*Id*.). The Court denied both motions as to Count II. (*Id*.). The Court has since entered a written order memorializing its oral rulings. (Doc. 223).

Because the remaining claim was equitable, the Court rejected Defendant's request for a jury trial and held a bench trial on Count II from April 6, 2026, to April 8, 2026. (Docs. 209; 210; 211). The preliminary injunction (Doc. 33) expired on April 8, 2026, the last day of the bench trial. The Court sets forth its findings of fact and conclusions of law regarding Count II below.

### Findings of Fact

1.   Plaintiff is a Maryland corporation with its principal place of business in San Jose, California. Defendant is a Florida resident and citizen, residing in Hillsborough County, Florida.

2.   Plaintiff is a medical equipment manufacturer. Specifically, Plaintiff manufactures and sells flow cytometer machines that quickly complete an automized cell phenotyping process. "Cell phenotyping is the process of identifying and characterizing cells based on their physical and biochemical properties." (Docs. 180 at ¶ 4; 186 at ¶ 4). Plaintiff's flow cytometer machines use "fluorescent markers to

analyze surface and intracellular proteins[.]"    (*Id*.).

3.    Plaintiff's primary customers are those looking to use Plaintiff's flow cytometers to automate the cell phenotyping process to check the quality of cells to be used in cell and gene therapy, immunology, cancer research, and stem cell biology. Without Plaintiff's flow cytometers, Plaintiff's customers would require a technician or skilled scientist who has undergone years of training to perform the cell phenotyping process manually.   Plaintiff's flow cytometers serve to shortcut that manual process.

4.    Defendant is an expert analyst in the flow cytometry field and was also skilled and equipped to perform the manual cell phenotyping process.

5.    Plaintiff employed Defendant from February 14, 2022, until it terminated him on November 19, 2024.   Defendant began his employment as an Applications Manager and was later promoted to Associate Director of Scientific Affairs, the position he held when he was terminated.

6.    After his termination, Defendant was paid a severance.

7.    Throughout his employment, Defendant's responsibilities included developing processes to be used with Plaintiff's flow cytometers and equipment, presenting at conferences, and helping to close customer sales.   He communicated with customers and prospective customers, participating in demonstrations of Plaintiff's flow cytometers to prospective customers, attended conferences in his capacity as an Accellix employee, and sometimes assisted customers that purchased Plaintiff's flow cytometers to interpret and refine the results.

8.    Throughout his employment, Defendant was a productive employee.   In 2023, he received a raise and a bonus.   In 2024, he was promoted from Applications

Manager to Associate Director of Scientific Affairs.

9.    Defendant, although still employed by Plaintiff, engaged in private consulting

work in the field of flow cytometry through his consulting business, CRBECH

Investments, Inc.

10.    Defendant's private consulting clients included Gift of Life, a bone marrow

registry doing business throughout the United States.   Gift of Life had been identified

as prospective customer of Plaintiff by March of 2023.   Defendant received $12,500.00

from Gift of Life for his services from May 2, 2023, through November 26, 2024, while

he was employed by Plaintiff and while Gift of Life was a prospective customer of

Plaintiff.

11.    Defendant also provided private consulting services to SlingShot, a company

that creates synthetic cells.   SlingShot was also identified as a prospective customer

of Plaintiff in as early as March of 2022.   Defendant received $1,225.00 for consulting

services he performed for SlingShot on December 3, 2023, while he was employed by

Plaintiff and while SlingShot was a prospective customer of Plaintiff.

12.    Plaintiff did not retain Gift of Life as a customer but ultimately retained

SlingShot after Defendant's employment with Plaintiff ended.   However, the Court

finds that Defendant's conduct did not prevent Plaintiff from obtaining Gift of Life as a

customer or delay Plaintiff in retaining SlingShot as a customer.

13.    While Defendant claims that his private consulting work was not in

competition with Plaintiff, the Court finds that it was competitive because Defendant's

consulting work would tend to help customers or prospective customers improve their

existing cell phenotyping methods and processes, effectively reducing or eliminating

any need to purchase Plaintiff's flow cytometer.   Defendant purported to offer in at least two LinkedIn posts to create "tailor-made" autoclassification services, which is the same service Plaintiff offered.   Defendant's various hyper-technical, scientific explanations to distinguish the nature of his consulting work from the line of business pursued by Plaintiff are completely unpersuasive.

14.   Plaintiff definitely knew or should have known that Defendant was engaged in private consulting ventures by April 23, 2023, *because Defendant told his supervisor Rey Mali he was doing consulting work in a WhatsApp message.*   The WhatsApp message showed that Defendant told Ms. Mali he was engaging in "regular consulting gigs" in addition to his regular employment with Plaintiff.   As such, Plaintiff knew or should have known from that message that Defendant was conducting a private consulting side business in a general sense.   Ms. Mali's suggestion that she might not have read that message is completely unavailing and not credible.   However, the evidence did not establish that Plaintiff knew Defendant's side consulting business was in competition with Plaintiff's business.   This is an important distinction.

15.   Plaintiff has shown by a preponderance of the evidence that Defendant engaged in private consulting work for Plaintiff's prospective customers Gift of Life and SlingShot that breached Defendant's fiduciary duty of loyalty to Plaintiff, and Defendant has failed to show that Plaintiff approved, agreed to, or acquiesced in this conduct.   The evidence, however, shows that Defendant did not abandon his work for Plaintiff but remained a productive employee for Plaintiff notwithstanding his side consulting business.

16.   Defendant has not argued or otherwise established any of his affirmative

defenses.

17.    The severance paid to Defendant upon his termination was deposited into his account under the incorrect assumption that Defendant had signed a separation agreement.    It is undisputed that Defendant did not sign the separation agreement and that the severance should not have been paid to Defendant.

## Conclusions of Law

### *Jurisdiction*

1.    Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds $75,000.    The Court therefore has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1332.

### *Plaintiff's Breach of Fiduciary Duty Claim (Count II)*

2.    Plaintiff asserts a claim for breach of fiduciary duty.    It is undisputed that Defendant was consulting with Gift of Life and SlingShot who were prospective customers of Plaintiff.    The disputed issue is whether Defendant's conduct breached his fiduciary duty of loyalty and whether the remedy sought by Plaintiff – forfeiture and disgorgement to Plaintiff of both the private consulting fees Defendant earned and Defendant's salary paid by Plaintiff – is an appropriate equitable remedy.

3.    Florida law recognizes that an employee owes a duty of loyalty to his employer. *Fish v. Adams*, 401 So. 2d 843, 845 (Fla. 5th DCA 1981).    By consulting with prospective customers Gift of Life and SlingShot while he was employed by Plaintiff, Defendant breached his fiduciary duty of loyalty.    *See, e.g., OPS Int'l, Inc. v. Ekeanyanwu*, 672 F. Supp. 3d 1228, 1236 (M.D. Fla. 2023) (explaining that an employee breaches his duty of loyalty when he solicits business for his own personal

endeavor where he had an obligation to obtain that business for his employer) (citing *Nat'l R.R. Passenger Corp. v. Veolia Transp. Servs., Inc.*, 791 F. Supp. 2d 33, 49 (D.D.C. 2011)).   Defendant's consulting services to Gift of Life and SlingShot aimed to improve their existing flow cytometry methods and processes, which would tend to eliminate Gift of Life and SlingShot's need to purchase Plaintiff's flow cytometer. This directly competed with Plaintiff and breached Defendant's fiduciary duty of loyalty.

### *Relief Awarded*

4. Plaintiff seeks (1) disgorgement of Defendant's ill-gotten gains from his private consulting work for Gift of Life and SlingShot, totalling **$13,725,** and (2) forfeiture of Defendant's entire salary earned throughout the course of his employment with Plaintiff, totalling **$482.290.72**.   In total, Plaintiff seeks a monetary award of **$496,015.72.**

Disgorgement

5. Disgorgement is an equitable remedy that serves "to deprive a wrongdoer of his ill-gotten gain."   *S.E.C. v. ETS Payphones, Inc.*, 408 F.3d 727, 734 n.6 & 735 (11th Cir. 2005) (quoting *S.E.C. v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978)); *SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 95 (2d Cir. 1978) (explaining that "the court is not awarding damages to which [a] plaintiff is legally entitled but is exercising the chancellor's discretion to prevent unjust enrichment").   "The decision whether to grant equitable relief, and, if granted, what form it shall take, lies in the discretion of the district court."   *Cohen v. Monroe Cty.*, 749 F. App'x 855, 859 (11th Cir. 2018) (citing *Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1563 (11th Cir. 1988) and *Black*

*Warrior Riverkeeper, Inc., v. U.S. Army Corps. of Eng'rs*, 781 F.2d 1271, 1290 (11th Cir. 2015)).

6.  Here, it would not be equitable to allow Defendant to keep fees he obtained from consulting services that breached his fiduciary duty of loyalty to Plaintiff.   Defendant received $12,500.00 from Gift of Life and $1,225.00 from SlingShot for services the Court has found constituted a breach of Defendant's duty to Plaintiff.   Plaintiff is therefore entitled to **$13,725.00** as an equitable remedy to deprive Defendant of these ill-gotten gains from his unauthorized private consulting work.   *See, e.g., King Mountain Condo. Ass'n v. Gundlach*, 425 So. 2d 569, 572 (Fla. 4th DCA 1982) (holding that disgorgement of "secret profits" from a breach of the duty of loyalty is an appropriate equitable remedy).

Forfeiture of Compensation

7.  Plaintiff also seeks forfeiture of Defendant's compensation for his entire term of employment.   Florida decisions imposing equitable remedies for breach of fiduciary duty have typically focused on depriving the defendant of ill-gotten gain obtained from a specific transaction involving a breach of fiduciary duty, such as an improper payment or transfer received from a third party, as in this case, or compensation received from the employer as a result of the defendant's work on a specific transaction.   Caselaw in other jurisdictions has endorsed a broader remedy in which the disloyal employee "may be compelled to [forgo] the compensation earned during the period of disloyalty."   *See, e.g., Hosp. Media Network, LLC v. Henderson*, 268 A.3d 657, 670 (Conn. App. Ct. 2019) (internal citations and quotations omitted).   In more egregious scenarios, depending on the circumstances, a court may conclude that all

compensation should be forfeited due to a defendant's disloyalty.   *Id.* at 413.

8.   According to the Restatement (Third) of Agency § 8.01, comment (d)(2), compensation forfeiture is "generally available" as a remedy.   But in assessing the extent of the remedy, courts look to "the specifics of the agent's work and the nature of the agent's breach of duty and . . . evaluate whether the agent's breach . . . tainted all of the agent's work or was confined to discrete transactions for which the agent was entitled to apportioned compensation."   *Id.*

9.   While Florida caselaw is scant on the issue of compensation forfeiture for an employee-defendant's breach of his fiduciary duty of loyalty, other courts have considered the following factors in determining whether forfeiture is appropriate in any given case: (1) the employee's position, (2) his salary from his employer, (3) the frequency, timing, and egregiousness of the breach of the duty of loyalty, (4) the extent or degree of the employer's knowledge of the breach, (5) the effect the breach has on the employee's otherwise properly performed duties or responsibilities to his employer, (6) the potential or actual harm to the employer's business, and (7) the availability and adequacy of other remedies.[1]

10.   Here, Defendant worked for Plaintiff from February 14, 2022, until Plaintiff terminated him on November 19, 2024.   At various times during that period of employment, Defendant also engaged in his private consulting work, including from May 2, 2023, until November 26, 2024, shortly after his employment with Plaintiff was

---

[1] *Wall Sys., Inc. v. Pompa*, 154 A.3d 989, 1002 (Conn. 2017) (citing *Rockefeller v. Grabow*, 39 P.3d 577 (Idaho 2001), *Kaye v. Rosefielde*, 121 A.3d 862 (N.J. 2015), *Cameco, Inc. v. Gedicke*, 724 A.2d 783 (N.J. 1999), *Futch v. McAllister Towing of Georgetown, Inc.*, 518 S.E.2d 591 (S.C. 1999), *Burrow v. Ace*, 997 S.W.2d 229 (Tex. 1999), and *Hartford Elevator, Inc. v. Lauer*, 289 N.W.2d 280 (Wis. 1990)).

terminated.   Defendant's private consulting for Gift of Life and SlingShot occurred on some occasions during business hours.   At other times, it occurred at night after business hours and on days that Defendant took paid time off or vacation.

11.   Notwithstanding about 43.25 hours spent engaging in this side business over about a year and a half period, Defendant remained a successful employee for Plaintiff, received yearly raises and even a bonus, and was promoted from Applications Manager to Associate Director of Scientific Affairs.   The time spent in private consulting was relatively minor, as were the fees he received from Gift of Life and SlingShot, and the record is devoid of any evidence that Defendant's private consulting negatively impacted his ability to carry out his responsibilities for Plaintiff or caused any actual harm to Plaintiff, such as lost customers or lost sales.

12.   Based on these considerations, Plaintiff's request for disgorgement of Defendant's total compensation for the entire period of his employment is, at best, an overreach, and at worst, frivolous.   The Court finds that forfeiture of Defendant's total compensation for the entire period of his employment with Plaintiff is not an appropriate equitable remedy.   *See Searcy, Denney, Scarola, Barnhart & Shipley, P.A., v. Scheller*, 629 So. 2d 947, 952-53 (Fla. 4th DCA 1993) (explaining that, in a lawyer-client context, where a lawyer breaches a fiduciary duty to his client, "fee forfeiture is not an automatic remedy, even for serious transgressions").   Instead, disgorgement of money Defendant received will be limited to the fees he received from Gift of Life and SlingShot.

13.   The Court further holds, however, in the interest of justice and equity, that Defendant must also repay to Plaintiff the severance provided to him by Plaintiff upon

his termination in the amount of **$11,500** because it is undisputed that Defendant should have not been paid the severance in the absence of his signing a separation agreement.   Defendant admitted at trial that he did not sign the separation agreement.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Based on the Court's summary judgment order, *see* (Doc. 223), the Clerk is directed to enter judgment in favor of Plaintiff Accellix, Inc., and against Defendant Christian Aguilera-Sandoval, on Count I.

(2) Based on the Court's findings of fact and conclusions of law set forth herein, the Clerk is directed to enter judgment in favor of Plaintiff's Accellix, Inc., and against Defendant Christian Aguilera-Sandoval, on Count II in the amount of **$25,225.00.**

(3) After the entry of judgment, the Clerk is directed close this case.   The Clerk should not terminate any remaining pending motions in this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 7th day of June, 2026.

TOM BARBER
UNITED STATES DISTRICT JUDGE